UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOHN GRAPSAS,

                    Plaintiff,                **MEMORANDUM AND ORDER**
                                                                            2:16-cv-775 (DRH)(ARL)

     - against –

NORTH SHORE FARMS TWO, LTD.,[1]

                    Defendant.
--------------------------------------------------------X

**APPEARANCES**

**ABDUL KARIM HASSAN LAW GROUP, PLLC**
Attorney for Plaintiff
215-28 Hillside Ave
Queens, NY 11427
By:    Abdul Karim Hassan, Esq.

**DUANE MORRIS LLP**
Attorneys for Defendant
1540 Broadway
New York, NY 10036
By:    Michael Tiliakos, Esq.
         Evangelos Michailidis, Esq.
         Katelynn M. Gray, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff-Decedent John Grapsas ("Plaintiff") originally brought this action against

Defendant North Shore Market Place, LTD[2] ("Defendant") under the Fair Labor Standards Act,

29 U.S.C. § 291 et seq. ("FLSA") and New York Lab. Law §§ 191 and 193 for unpaid overtime

wages, failure to provide proper notices and statements, liquidated damages, and attorneys' fees.

---

[1] North Shore Market Place, LTD was incorrectly named in the caption as North Shore Farms Two, Ltd.
[2] *Id.*

(Compl. [DE 1] ¶¶ 1–3.) Presently before the Court is Defendant's motion to dismiss for failure to substitute a party pursuant to Fed. R. Civ. P. 25(a)(1) ("Rule 25(a)(1)"). For the reasons explained below, the motion to dismiss is granted.

## BACKGROUND

The following facts are taken from the Parties' submissions and the Complaint.

Defendant is engaged in the grocery/produce business and owns and operates approximately six or more stores with several hundred employees. (Compl. ¶¶ 9–10.) Plaintiff was employed by Defendant from on or around June/July 2013 to on or around January 29, 2016. (*Id.* ¶ 11.) Plaintiff was a maintenance person and claims that from March 2014 through January 2016 he worked approximately eleven to twelve hours a day, six days a week. (*Id.* ¶ 14.) Plaintiff alleges that he was not paid any wages, let alone overtime wages, for approximately 12 hours worked each week (two hours per day for the hours from 4:00 a.m. to 6:00 a.m.). (*Id.* ¶ 14.) Plaintiff also claims that in one of his roles working for Defendant he was required to expend $25 to $30 a day for gas, for which Defendant failed to reimburse Plaintiff in full. (*Id.* ¶ 15.)

On May 3, 2017, Defendant filed a letter requesting a pre-motion conference for a motion for summary judgment. Plaintiff filed a letter the same day for his own motion for summary judgment. At some time shortly thereafter, Defendant's counsel learned of Plaintiff's passing and reached out to Plaintiff's counsel by e-mail on May 8, 2017, to confirm. (Ex. A to Def.'s Reply Mem. in Supp. [DE 36] at 1.) Plaintiff's counsel replied stating that he had "confirmed with the family that [Plaintiff] had passed away. (*Id.*) On May 10, 2017, Defendant filed a Suggestion of Death on the record. (Suggestion of Death [DE 27] at 1.) Defendant did not serve the Suggestion of Death on any other person other than Plaintiff's Counsel via ECF. (*See id.*)

Defendant's counsel claims that she did not know who else to serve as Plaintiff's "successor" was never revealed and still has not been identified. (Reply Mem. in Supp. at 2.) On May 11, 2017, this Court denied both requests for pre-motion conferences without prejudice and with the right to renew once an appropriate substitution for Plaintiff was made.

On August 21, 2017, Defendant filed a letter motion to dismiss pursuant to Rule 25(a) for Plaintiff's failure to substitute an appropriate person by the end of the 90 day period, which expired on August 8, 2017. (Letter Motion to Dismiss [DE 28] at 1.) On August 22, 2018, this Court ordered the Plaintiff to file opposition papers on or before September 22, 2017. Plaintiff failed to submit any correspondence of any kind with the Court in response to the Order. On October 17, 2017, Defendant again filed a motion to dismiss in light of Plaintiff's failure to substitute an appropriate party or reply. On October 23, 2017, the Court entered an Order to Show Cause directing Plaintiff to show cause in writing filed on or before November 10, 2017, why the action should not be dismissed for failure to substitute an appropriate party.

On November 10, 2017, Plaintiff's counsel filed a letter stating that "[o]rdinarily, we would not oppose dismissal of the action in light of plaintiff's death. However, we respectfully request the Court keep the stay in place until defendant confirms that a related state court case against plaintiff Grapsas by defendant's owner is dismissed in light of plaintiff's death." (Response to Order to Show Cause [DE 31] at 1.) Plaintiff's counsel specifically noted that after Plaintiff's death, the plaintiff in the state court case sought to appoint a fiduciary for Mr. Grapsas and that any such fiduciary would most likely need to pursue this action as well. (*Id.* at 2.)

On November 13, 2016, the Court directed Defendant to file its reply to Plaintiff's response to the Order to Show Cause. Defendant replied on November 17, 2017, by, again, filing a letter motion to dismiss. On December 4, 2017, the Court entered an Order noting that

while all of Defendant's numerous motions to dismiss were filed in violation of the Court's practice rules, the Court would entertain Defendant's motion in its discretion given Plaintiff's repeated failure to abide by the Court's briefing schedule. The Court set an updated briefing schedule requiring Plaintiff to reply by December 4, 2017. On December 3, 2017, Plaintiff filed a motion for a two-week extension of time to file its opposition papers in order to "further confer with the family of Mr. Grapsas—the deceased Plaintiff." (Letter Motion for Ext. [DE 33] at 1.) The Court denied the requested extension in light of the fact that the issue of substitution had been pending for almost seven months, but granted a limited extension to December 8, 2017. Plaintiff filed his response on December 8, 2017, and Defendant filed it reply in support on December 21, 2017.

## LEGAL STANDARD

Under Rule 25(a)(1), substitution of a party[3] due to death for a claim that is not extinguished may be done by court order. However, "i]f the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Rule. 25(a)(1).

Despite the use of "must" in Rule 25(a)(1), courts have discretion to extend this 90-day period for good cause pursuant to Fed. R. Civ. P. 6(b). Courts may grant an extension "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b); *see also Zeidman v. Gen. Accident Ins. Co.*, 122 F.R.D. 160, 161 (S.D.N.Y.

---

[3] "A 'proper party' for substitution under Rule 25(a)(1) is either (1) a successor of the deceased party—a distributee of an estate *if the estate of the deceased has been distributed at the time the motion for substitution has been made,* or (2) a representative of the deceased party—a person lawfully designated by state authority to represent the deceased's estate.'" *Lungu v. New Island Hosp./St. Joseph Hosp.*, No. 11-CV-755, 2012 WL 3115930, at *2 (E.D.N.Y. June 4, 2012) (quoting *Allen ex rel. Allen,* No 9 CV 668, 2011 WL 5117619, at * 4 (E.D.N.Y. Oct. 25, 20166) (emphasis added); *see also Perlow v. Commissioner of Social Security,* No. 10–cv–1661, 2010 WL 4699871, at * 2 (E.D.N.Y. Nov.10, 2010).)

1988) (explaining that Fed. R. Civ. P. 6(b) "works in conjunction with Rule 25(a)(1) to provide the intended flexibility in enlarging the time for substitution."). As the Seventh, Ninth, and Tenth Circuit Court of Appeals have found, the "history of Rule 25(a) and Rule 6(b) makes it clear that the 90-day time period was not intended to act as a bar to otherwise meritorious actions, and extensions of the period may be liberally granted." *Zanowick v. Baxter Healthcare Corporation*, 850 F.3d 1090, 1094 (9th Cir. 2017) (citing *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993)); *see also United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031, 1035 (10th Cir. 1974) (stating that under Rule 25, a "discretionary extension should be liberally granted absent a showing of bad faith on the part of the movant for substitution or undue prejudice to other parties to the action.").

The Supreme Court has previously laid out a four-part test for to determine "excusable neglect." *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 388 (1993). In *Pioneer*, the Supreme Court explained that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* The Supreme Court further stated that "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the post for our purposes, 'to leave undone or unattended to *especially through carelessness*.'" *Id.* (quoting *Webster's Ninth New Collegiate Dictionary* (1983) (alterations omitted) (emphasis in original)). The Supreme Court ultimately held that the determination of "whether a party's neglect of a deadline is excusable . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission [including] . . . "[1] the danger of prejudice to the [other party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was

within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395.

The Second Circuit has explained that "despite the flexibility of 'excusable neglect'" and the fact that three of the four factors in the *Pioneer* test "usually weigh in favor of the party seeking the extension, [it] and other circuits have focused on the third factor: 'the reason for the delay, including whether it was within the reasonable control of the movant.'" *Sillivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003). In other words, even if three of the factors suggest that the moving party should receive an extension, if the reason for the delay was within the reasonable control of the movant an extension will not necessarily be granted.

The Second Circuit has "taken a hard line" on excusable neglect, finding that while substantial rights may be forfeited if they are not asserted within the established time limits, "the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced[.]" *Id.* at 367–68. Moreover, where "'the rule is entirely clear, we continue to expect that a party claiming excusable neglect will in the ordinary course, lose under the *Pioneer* test.'" *Id.* (quoting *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250–51 (2d Cir. 1997)).

Courts have found excusable neglect in the Rule 25 context to include "difficulty in appointing an administrator . . . where there is a prompt application for such an appointment." *Kernisant v. City of New York*, 225 F.R.D. 422, 428 (E.D.N.Y. 2005). Courts have found that excusable neglect does *not* include attorney inadvertence or an attorney's heavy caseload. *See, e.g.*, *Steward v. City of New York*, No. 04-CV-1509, 2007 WL 2693667, at *6 (E.D.N.Y. Sept. 10, 2007). Courts in the Eastern District of New York have previously declined to find excusable neglect where an administrator did not petition the Surrogate Court for more than six

months after plaintiff died, and for more than two weeks after the court issued an order setting forth deadlines for substituting a party. *Lungu*, 2012 WL 3115930, at *2 (finding that the administrator provided no explanation for such delay nor did he claim any difficulty in seeking appointment of an administrator). *Id.* A court in the Southern District of New York has held that the "argument for not finding excusable neglect is strengthened by the fact that plaintiff's heirs were partially at fault in the failure to move to timely substitute parties." *Zeidman*, 122 F.R.D. at 162 (plaintiff's heir was reluctant to take on the role of administrator of plaintiff's estate until learning she could personally profit, which greatly contributed to the delay).

## DISCUSSION

Here, Plaintiff's counsel still has not identified a successor or moved to substitute a party, over nine months after the Suggestion of Death was filed. Rather, he asks for a one-year extension of time to substitute an appropriate party under Rule 25(a) pending the outcome of a seemingly unrelated state court action. (P's Response in Opp. [DE 35] at 1–2 (hereinafter "Opp.").)

### I.     Service Under Rule 25(a)(1)

Plaintiff's counsel argues for the first time in his Opposition that Defendant failed to properly serve the Suggestion of Death, and that the 90-day period has therefore not begun. (*Id.*) Plaintiff is correct that Rule 25(a) requires service on whomever is identified as the decedent's representative or successor. *See Atkins v. City of Chicago*, 547 F.3d 869, 874 (7th Cir. 2008); *see also Servidone Const. Corp. v. Levine*, 156 F.3d 414, 416 (2d Cir. 1998). Rule 25(a) also requires that service on non-parties be carried out in accordance with Fed. R. Civ. P. 4. *See id.* The Second Circuit has explained that Rule 25(a) "does not require that the statement identify

the successor or legal representative; it merely requires that the statement of death be served on the involved parties." *Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 469 (2d Cir. 1998).

While the Suggestion of Death here was filed, rather than served, there is an established and relevant exception for this exact scenario. In *George v. U.S.*, the defendant filed a suggestion of death after plaintiff's surviving spouse executed her Application for Probate of Will, but did not serve the suggestion on plaintiff's spouse or the lawyers. 208 F.R.D. 29, 32 (D. Conn. 2001); *see also Atkins*, 547 F.3d at 874 (citing *George* for this same proposition). In *George*, the defendant argued that it was not required to serve plaintiff's successor because shortly after the suggestion of death was filed plaintiff's counsel indicated that plaintiff's estate would soon seek to be substituted. (*Id.*) The Court found that based on the evidence in the records, "there [was] no indication that defendant had notice of the pending appointment of [plaintiff's surviving spouse] on August 8, 2000, the date defendant filed the Suggestion of Death." *Id.* In other words, if "the suggesting party could not have known the identity of the deceased party's legal successor, the failure to serve the suggestion of death on the legal successor might be deemed excusable, and as a result, a suggestion of death that was served only on the parties, might not be rendered invalid for failure to serve the non-party." *Gothberg v. Town of Plainville*, 205 F.R.D. 26, 30 (D. Conn. 2015) (citing *Yonofsky v. Wernick*, 362 F. Supp. 1005, 1011–12 (S.D.N.Y. 1973)); *see also Atkins*, 547 F.3d at 873 (citing *George*, 208 F.R.D. at 32) ("if the suggestion of death is filed by the opposing party, that party is not required to serve a successor or representative if he doesn't know who that is, and so the 90-day period starts to run from the filing of the suggestion"); *Burgos-Ynatin v. Municipality of Diaz*, 709 F. Supp. 2d 118, 122 (D. Puerto Rico 2010) (citing the same); *In re Aredia and Zometa Produts Liability*

*Litigation*, No. 06 CV 974, 2011 WL 2682995 at *2 (M.D. Tenn. July 11, 2011) (citing the same).

The facts here are almost identical to those in *George*, as Defendant did not know Plaintiff's successors at the time the suggestion of death was filed. (*See* Mem. in Supp. at 2.) Like in *George*, Plaintiff's counsel told Defendant's counsel that he was going to confer with Plaintiff's successors, which gave Defendant's counsel the impression that they would be made aware of the Suggestion of Death. (*See id.*) The Court notes that this exception must be extremely narrowly drawn to avoid circumventing the requirements of the plain text of Rule 25(a). *See In re C.R. Stone Concrete Contractors, Inc.*, 462 B.R. 6, 19 (Bankr. D. Mass 2011) (disagreeing with the holding in *George*). However, the facts here fit squarely within the *George* exception—the underlying rationale of which the Court adopts—so service was not deficient under Rule 25(a), and the 90-day period began when Defendant filed the Suggestion of Death on May 10, 2017. Rejecting Plaintiff's first argument, the Court will now evaluate Plaintiff's and Defendant's requests under the Supreme Court's four-part test for excusable neglect.

**II.     Excusable Neglect**

The first element the Court must consider is whether there is any danger of prejudice to Defendant in granting Plaintiff's request for an extension. *Pioneer*, 507 U.S. at 395. Plaintiff does not address this issue in his opposition and, notably, neither does Defendant. Courts have found that delay alone can be prejudicial "due to the unnecessary imposition of the burdens of prolonging litigation." *Zeidman*, 122 F.R.D. at 162. However, based on the evidence presented, the nature of this litigation, and Defendant's ongoing legal obligations under the FLSA and N.Y. Lab. Law to preserve records, the Court finds that there is little danger of prejudice to Defendant.

The second element is the length of the delay and its potential impact on judicial proceedings. *Pioneer*, 507 U.S. at 395. In his response, which was filed seven months after the suggestion of death, Plaintiff's counsel requests a year-long extension of the 90-day period. (Opp. at 1.) Plaintiff's counsel does not specify whether the one year accrues from the date of the suggestion of death (for a 12-month period to substitute an appropriate party) or from the end of the 90-day period (thereby amounting to a 15-month period). (*See id.*) Under either scenario, this is an excessively long delay given that Plaintiff's counsel has now been conferring with Plaintiff's family since the suggestion of death was filed over nine months ago. Moreover, Plaintiff's counsel provides no evidence or legal authority for such a lengthy delay. (*See id.* at 2.) Courts have granted motions to dismiss on both shorter and similar delays. *See, e.g.*, *Nsamwa Lungu v. New Island Hosp.*, No. 11 CV 755, 2012 WL 2050205, at *2 (E.D.N.Y. June 4, 2012) (denying a motion to substitute a party that was brought six months after the 90-day period without any explanation for the delay); *Nicosia v. U.S.*, No. 11 CV 5069, 2014 WL 2957496, at *3–4 (E.D.N.Y. July 1, 2014) (granting a motion to dismiss when the plaintiff had not moved to file for substitution after nine months and provided no good cause); *Mulvey v. Sonnenschein Nath & Rosenthal LLP*, No 8 CV 1120, 2011 WL 5191320, at *1 (E.D.N.Y. Oct. 31, 2011) (dismissing a case in which the plaintiff had failed to move for substitution for over a year); *Louis v. Wright*, No. 12 CV 6333, 2017 WL 1194498, at *2 (E.D.N.Y. March 30, 2017) (adopting a Report and Recommendation granting a motion to dismiss where plaintiff had not yet filed a motion for substitution 14 months after the suggestion of death was filed). Here, a 12- or 15-month delay in the litigation with no reasonable justification for the delay and no assurance that it will in fact be limited to that amount of time, is unduly excessive and detrimental to Defendant's rights as a litigant and to the Court's resources.

The third element is the reason for the delay, including whether it was within the reasonable control of Plaintiff. *Pioneer*, 507 U.S. at 395. Here, it appears that the delay was very much in Plaintiff's control as Plaintiff's counsel conferred with Plaintiff's family before the Suggestion of Death was even filed. (*See* Reply Mem. in Supp. at 1.) Plaintiff's counsel also asked for additional time to file his opposition papers in order to "confer" with Plaintiff's family. (Letter Motion for Ext. at 1.) Given that the Court granted a limited extension, Plaintiff's counsel should have had yet another opportunity to confer with the family before filing his response.

Most importantly, Plaintiff's counsel gives no explanation for the delay or any evidence that it was caused by factors outside of Plaintiff's successors' or Plaintiff's counsel's control, such as difficulty in appointing an administrator. *See Kernisant*, 225 F.R.D. at 428. The Court is not convinced that the pending, seemingly unrelated, state court litigation has any bearing on Plaintiff's successor's ability to appoint a substitute party under Rule 25(a). Considering that Plaintiff's counsel repeatedly failed to abide by this Court's briefing deadlines for months, it seems that the reason for delay here is and was squarely within Plaintiff's counsel's control. As the Second Circuit indicated in *Sillivanch*, if the reason for the delay was within the reasonable control of the movant the courts are less inclined to grant an extension. 333 F.3d at 366.

Fourth, and finally, the Court must consider whether Plaintiff's counsel has acted in good faith. *Pioneer*, 507 U.S. at 395. As stated above, Plaintiff's counsel has not given any reason for the extended delay in substituting a party and the only basis for his request for a one-year extension is a seemingly unrelated, allegedly retaliatory state action. Moreover, he has repeatedly disregarded the Court's deadlines. Finally, Plaintiff's counsel openly indicates in his Opposition that his continued interest in this case revolves around his concern about receiving

his fees. (*See* Opp. at 2.) If Plaintiff's counsel had been actively doing everything, or at least something, within his power to substitute an appropriate party and comply with the Court's rules and deadlines the Court could infer that he was acting in good faith, even if his motivation was purely related to his own personal financial interest. However, there is no evidence in the record whatsoever that Plaintiff's counsel has acted in good faith now or at any other time since Plaintiff's death.

Accordingly, three of the four *Pioneer* test factors strongly weigh against finding excusable neglect on the part of Plaintiff's counsel or Plaintiff's successors. Therefore, Plaintiff's request for an extension is denied and Defendant's motion to dismiss for failure to substitute an appropriate party under Rule 25(a) is granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted and Plaintiff's request for an extension is denied. This matter is dismissed with prejudice, and the Clerk of Court is directed to close the case.

**SO ORDERED.**

Dated: Central Islip, New York
February 28, 2018

/s/
Denis R. Hurley
Unites States District Judge